NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |
|---|---|
| JEAN EMMANUEL RODRIGUEZ, | : |
|  | : |
|        Plaintiff, | : |
|  | : |
|        v. | : |
|  | : |
| THE STATE OF NEW JERSEY et al., | : |
|  | : |
|        Defendants. | : |

Civil Action No. 13-4101 (RMB)

**OPINION**
**APPLIES TO ALL ACTIONS**

---

JEAN EMMANUEL RODRIGUEZ,        :
                                :
          Plaintiff,            :   Civil Action No. 13-5866 (RMB)
                                :
          v.                    :
                                :
BERNARD E. DELURY, JR. et al.,  :
                                :
          Defendants.           :

---

JEAN EMMANUEL RODRIGUEZ,        :
                                :
          Plaintiff,            :   Civil Action No. 13-6131 (RMB)
                                :
          v.                    :
                                :
THE CITY OF SOMERS POINT et al.,:
                                :
          Defendants.           :

---

JEAN EMMANUEL RODRIGUEZ,        :
                                :
          Plaintiff,            :   Civil Action No. 13-6132 (RMB)
                                :
          v.                    :
                                :
BERNARD E. DELURY, JR.          :
                                :
          Defendant.            :

continued . . .

. . . continued

_____

                                    :
JEAN EMMANUEL RODRIGUEZ,            :
                                    :   Civil Action No. 13-6178 (RMB)
            Plaintiff,              :
                                    :
        v.                          :
                                    :
STEPHANIE K. THEWS et al.,          :
                                    :
            Defendants.             :
_____:_____
                                    :
JEAN EMMANUEL RODRIGUEZ,            :
                                    :   Civil Action No. 13-6179 (RMB)
            Plaintiff,              :
                                    :
        v.                          :
                                    :
THE STATE OF NEW JERSEY,            :
                                    :
            Defendant.              :
_____:_____
                                    :
JEAN EMMANUEL RODRIGUEZ,            :
                                    :   Civil Action No. 13-7055 (RMB)
            Plaintiff,              :
                                    :
        v.                          :
                                    :
MARK H. SANDSON et al.,             :
                                    :
            Defendants.             :
_____:_____
                                    :
JEAN EMMANUEL RODRIGUEZ,            :
                                    :   Civil Action No. 13-7056 (RMB)
            Plaintiff,              :
                                    :
        v.                          :
                                    :
MARK H. SANDSON et al.,             :
                                    :
            Defendants.             :
_____:_____

continued . . .

. . . continued

```
_____
                                    :
JEAN EMMANUEL RODRIGUEZ,            :
                                    :    Civil Action No. 13-7057 (RMB)
              Plaintiff,            :
                                    :
          v.                        :
                                    :
JEROME MORSE et al.,                :
                                    :
              Defendants.           :
_____:_____
                                    :
JEAN EMMANUEL RODRIGUEZ,            :
                                    :    Civil Action No. 13-7058 (RMB)
              Plaintiff,            :
                                    :
          v.                        :
                                    :
BERNARD E. DELURY, et al.,          :
                                    :
              Defendants.           :
_____:_____
```

## OPINION
## APPLIES TO ALL ACTIONS

The ten civil matters come before the Court upon the Clerk's receipt of four civil complaints executed by Jean Emmanuel Rodriguez ("Plaintiff") and Plaintiff's submission of his prison account statement in the six civil actions Plaintiff previously commenced in this District. For the reasons detailed below, Plaintiff's in forma pauperis ("IFP") status will be granted in the four latest matters, and his complaints filed in those four matters will be dismissed, with prejudice, for failure to state a claim upon which relief can be granted and in light of them being not amenable to cure by repleading.

The Court's determination as to Plaintiff's IFP status for the purposes of the six matters he commenced prior will remain reserved in light of: (a) Plaintiff's failure to file an amended pleading in each of those matters; and, (b) his failure to submit a document conclusively establishing his incarceration status at the time of his commencement of the first matter among those six. Plaintiff will be allowed one last extension of time to file the required amended complaints in these six actions;[1] if he elects to file an amended complaint in Rodriguez-I, he will be directed to accompany the same with his affidavit averring to and conclusively establishing his incarceration status at the time of when he submitted his original complaint in that matter.

I. BACKGROUND

Plaintiff's history of litigation in this District began on July 2, 2013, when the Clerk received his first civil complaint that gave rise to Rodriguez v. State of New Jersey ("Rodriguez-I"), Civil Action No. 13-4101 (RMB) (D.N.J.).  There, Plaintiff named, as defendants, the State of New Jersey, New Jersey Governor Chris Christie, then-New-Jersey-Attorney-General Jeffery S. Chiesa, numerous individuals employed at the Office of New Jersey Attorney General (i.e., Alan B. Handler, James R. Zazzali,

---

[1]  If Plaintiff files such amended complaints, the Court will screen them for sua sponte dismissal, see 28 U.S.C. §§1915 and 1915A, and direct assessment of filing fees regardless of the outcome of that screening.  See Izquierdo v. State, 2013 U.S. App. LEXIS 15533, at *2-3 and n.1 (3d Cir. July 25, 2013).

Edward J. Dauber, Theodore Z. Davis, John J. Farmer Jr., Theresa
M. Kiuck, Alice Click, Richard W. Roper, M. Karen Thompson), the
Atlantic County, numerous individuals performing various
functions for that County or for the vicinage of the Superior
Court of New Jersey, Law Division, having seat at that County
(*i.e.*, Dennis Levinson, Judge Mark H. Sandson, Judge James E.
Isman, Judge Joseph 1. Marczyk, Judge Nelson C. Johnson, Theodore
F. L. Housel, Eric Shenkus, Erica Halayko, Jessica Ramirez), the
County of Essex County, two individuals performing functions for
that county or for vicinage of the Superior Court of New Jersey,
Law Division, having seat at that County (*i.e.*, Joseph N.
DiVincenzo, Jr. and Judge Hutchins Henderson), Atlantic City,
numerous individuals performing various functions for that City
or its municipal courts (*i.e.*, Lorenzo T. Langford, Judges Bruce
F. Weekes, Braun Littlefield, Kelly Hasson Blanchet, Michelle
Funk, Ernest Jubilee, John Devlin, Tim Friel, Sgt. Hendricks,
Arthur Freedman and unspecified "staff), City of Newark, now-
United-States-Senator and then-Newark-Mayor, Corey Booker, and a
certain Natasha Purvey who performed functions for that City, as
well as two individuals whose connection to the above-listed
entities or individuals was not specified (*i.e.*, Tracy L. Riley
and Pat Hallman).  The <u>Rodruquez-I</u> complaint concluded with the
following request for relief:

> The State of New Jersey shall over[]turn every
> conviction against [Plaintiff], and refund all monetary
> assets falsely acquire, from [Plaintiff as a result of
> his arrests, multiple criminal prosecutions and
> numerous penal convictions, such as] (time, money,
> social credibility, and all assets . . . . The
> fraudulent entities in the Cities of Atlantic City and
> Newark, and the Counties of Atlantic and Essex shall be
> disbarred and brought up before the proper authorities
> to answer for their actions. The State of New Jersey
> and all participating entities shall pay every debt
> acquired by [Plaintiff] during these transgressions.
> The State of New Jersey shall provide free room, board,
> and tuition [to Plaintiff] at New Jersey Institute of
> Technology, so that [he could] obtain two bachelor
> degrees of his choice. The State of New Jersey shall
> [also] provide tuition, room, and board at Rutgers
> University, so [that Plaintiff could] obtain a degree
> in law and enter a master's program [of unspecified
> specialization]. The Cities of Atlantic City and
> Newark shall contribute the sum $500,000.00 [British]
> pounds to [ensure] the well-being of [Plaintiff].

Rodriquez-I, Docket Entry No. 1, at 2.

Since the IFP application submitted in conjunction with that first complaint: (a) included the required affidavit of poverty; and (b) suggested that Plaintiff was not in custody, the Court granted Plaintiff IFP status for the purposes of Rodriquez-I and, upon screening that complaint, dismissed it without prejudice to filing an amended pleading and, to assist Plaintiff, detailed to him the pleading requirement. See id., Docket Entry No. 2.

Yet, when Plaintiff filed his amended Rodriquez-I pleading, he named the same entities/individuals as defendants. See id., Docket Entry No. 3. Moreover, he made the same allegations; the sole distinction between his original and amended pleading was

6

that he mentioned a certain "fraudulent hearing" conducted by the Advisory Committee on Judicial Conduct (<u>i.e.</u>, an arm of the Supreme Court of New Jersey) in response to what, seemingly, had been his filing of a grievance against one of the Superior Court judges who presided over his criminal proceedings and/or his direct appeal or collateral attack.  <u>See</u> <u>id.</u>

The Court screened that amended pleading and, taking notice of factual insufficiency of Plaintiff's allegations, dismissed it too without prejudice, this time providing an in-depth discussion of the pleading requirement.  <u>See</u> <u>id.</u>, Docket Entry No. 4.

The second amended complaint followed.  <u>See</u> <u>id.</u>, Docket Entry No. 5.  It made the same demands, named the same entities/ individuals as defendants, and asserted, without a clarification, the wrongs of "arresting Plaintiff without probable cause," "detaining Plaintiff for an extended period of time without probable cause," "ransoming Plaintiff's freedom without probable cause," "continuously summoning Plaintiff without probable cause," "denying Plaintiff proper counsel," "prosecuting Plaintiff with fraudulent accusations," "denying Plaintiff equal rights under the law," "conspiring against the civil rights of Plaintiff," "breach of verbal contract and defamation of Plaintiff's character."  <u>Id.</u> at 3.

The Court screened Plaintiff's second amended complaint and, once again, dismissed it while re-explaining, this time at great

length, the pleading standard.  See id., Docket Entry No. 6. at
2-4.  Out of an abundance of caution, the Court allowed Plaintiff
one more opportunity to amend his Rodriguez-I pleadings.

Plaintiff, however, filed nothing in Rodriquez-I.  Rather,
on October 2, 2013, he submitted a new civil complaint that gave
rise to Rodriguez v. DeLury ("Rodriguez-II"), Civil Action No.
13-5866 (RMB) (D.N.J.).  See Rodriquez-II, Docket Entry No. 1.

Taking notice of the similarities between the allegations
raised in Rodriquez-I and Rodriquez-II (and the deficiencies of
those allegations), and mindful of the possibility that Plaintiff
might have inadvertently commenced this new action, the Court
construed his Rodriquez-II pleading as Plaintiff's third amended
complaint intended for filing in Rodriquez-I.  The Court, thus,
terminated Rodriquez-II as duplicative and, upon screening the
so-construed third amended complaint, dismissed it without
prejudice and, once again, extending Plaintiff's time to amend
his pleading in Rodriquez-I.[2]  See id., Docket Entry No. 3.

Plaintiff however, did not file anything in Rodriquez-I.
Nor did he make any submissions in Rodriquez-II.  Rather, he

_____

    [2]  The Rodriquez-II complaint named, as defendants,
Honorable Bernard DeLury, a state court judge, state prosecutor
James McClaim and a certain Geraldine Cohen.  It alleged that the
judge and the prosecutor "operate[d] an inferior court," while
Cohen had Plaintiff "physically confined on a warrant" Plaintiff
deemed defective for the reason it was issued by an entity
Plaintiff did not know.  Rodriquez-II, Docket Entry No. 1, at 1.

8

submitted four new civil complaints that gave rise, respectively,

to <u>Rodriquez v. City of Somers Point</u> ("<u>Rodriquez-III</u>"), Civil

Action No. 13-6131 (RMB) (D.N.J.); <u>Rodriquez v. DeLury</u>

("<u>Rodriquez-IV</u>"), Civil Action No. 13-6132 (RMB) (D.N.J.);

<u>Rodriquez v. Thews</u> ("<u>Rodriquez-V</u>"), Civil Action No. 13-6178

(RMB) (D.N.J.); <u>Rodriquez v. New Jersey</u> ("<u>Rodriquez-VI</u>"), Civil

Action No. 13-6179 (RMB) (D.N.J.).[3]

---

[3]    The complaint in <u>Rodriquez-III</u> alleged that the City of
Somers Point and its municipal court, as well as the City's
police department, were "depriv[ing] Plaintiff . . . of life and
liberty by false accusations, violation of probable cause, and .
. . den[ial of] due process" and sought an "audio-video evidence
from [Plaintiff's] holding cell," an order directing deposition
of a certain police officer, and this Court's verification of the
jurisdiction and "validity of the inferior" Superior Court of New
Jersey, as well as $1 million in damages sought for Plaintiff's
"emotional distress, psychological abuse and social degradation."
The complaint in <u>Rodriquez-IV</u> stated Plaintiff's sovereign
citizenship beliefs and asserted claims based on those beliefs,
while maintaining that Judge DeLury violated Plaintiff's rights
by declining his request for verification of the Superior Court's
jurisdictional mandate to prosecute Plaintiff.  The complaint in
<u>Rodriquez-IV</u> closed by requesting "dismissal" of all New Jersey
penal statutes and $1 million in damages for Plaintiff's
"emotional distress, psychological abuse, social degradation and
physical discomfort."  The complaint in <u>Rodriquez-V</u> named, as
defendants, Stephanie K. Thews, John G. Barbieri, Howard Freed,
Mark G. Mcelwee, Jr., Shawn G. Mckelvey and John J. Miller and
alleged that they "deprived" him "of life and liberty" by
submitting testimonies that Plaintiff deemed fraudulent.  The
<u>Rodriquez-V</u> complaint asked this Court to make evidentiary
rulings in Plaintiff's currently ongoing state court prosecution,
recited the request for dismissal of all New Jersey penal
statutes (albeit limiting that request to the provisions
underlying Plaintiff's past and current prosecutions) and sought
compensatory damages in the amount of $1,000 for each day of
Plaintiff's incarceration.  Finally, the <u>Rodriquez-VI</u> complaint
named the State of New Jersey and the Governor's Office as
defendants, asserted "depriv[ation] of life, liberty, property

Unlike in Rodriguez-I, the complaints in Rodriguez-II, III, IV, V and VI arrived unaccompanied by Plaintiff's filing fee or his IFP applications. Moreover, those submissions suggested that Plaintiff's IFP application submitted in Rodriguez-I might have been deficient for lack of Plaintiff's account statement since it appeared that Plaintiff might have already been placed in custody at the time when he submitted his original Rodriguez-I complaint.

The Court, therefore, denied Plaintiff IFP status without prejudice for the purposes of Rodriguez-II, III, IV, V and VI, and suspended Plaintiff's IFP status for the purposes of Rodriguez-I, reserving that determination until Plaintiff's submission of his prison account and his showing that he was not in custody at the time of commencing Rodriguez-I. In conjunction with the same, the Court allowed Plaintiff "one final opportunity to amend his claims scattered among his many complaints" in those six matters. See Rodriguez v. New Jersey, 2013 U.S. Dist. LEXIS 152630, at *16 (D.N.J. Oct. 23, 2013) (opinion applicable to Rodriguez-I, II, III, IV, V and VI). The Court clarified that such final set of amended pleadings had to be executed "in strict compliance with the pleading requirement the Court already explained to Plaintiff time and again[,] . . . free of any

_____

and due process," and sought $5 million for Plaintiff's "emotional distress, psychological abuse, social degradation," and $10,000 per each hour of his incarceration.

sovereign citizenship, redemptionist . . . and akin allegations," free of habeas and duplicative challenges and, in addition, in compliance with the requirements of Rules 15, 18 and 20, which the Court explained to Plaintiff in great detail to assist him in producing a viable set of amended pleadings.  <u>Id.</u> at *16-20.

Two groups of Plaintiff's submissions followed.  In <u>Rodriquez-I</u>, <u>II</u>, <u>III</u>, <u>IV</u>, <u>V</u> and <u>VI</u>, Plaintiff made six identical filings consisting of: (a) his prison account statement covering the period from August 12, 2013, to November 3, 2013; and (b) a statement from an officer of the Atlantic County Jail ("ACJ") that Plaintiff entered *that facility* on August 12, 2013.[4]  <u>See</u>, <u>e.g.</u>, <u>Rodriquez-I</u>, Docket Entry No. 14.  None of these submissions was accompanied by an amended pleading.

The other group of submissions consisted of four new civil complaints that gave rise, respectively, to: (a) <u>Rodriquez v. Sandson</u> ("<u>Rodriquez-VII</u>"), Civil Action No. 13-7055 (RMB) (D.N.J.); (b) <u>Rodriquez v. Sandson</u> ("<u>Rodriquez-VIII</u>"), Civil Action No. 13-7056 (RMB) (D.N.J.); (c) <u>Rodriquez v. Morse</u> ("<u>Rodriquez-IX</u>"), Civil Action No. 13-7057 (RMB) (D.N.J.); and

---

[4]  The fact that Plaintiff entered the ACJ on August 12, 2013, is not dispositive for the purposes of the inquiry as to whether he was *in custody* on July 2, 2013, when he submitted his original <u>Rodriquez-I</u> complaint.  Plaintiff, currently a pre-trial detainee, might have been held at *another facility* at that time. Hence, he will be allowed an opportunity to submit an affidavit averring as to the periods when he was in any form of custody.

(d) <u>Rodriguez v. DeLury</u> ("<u>Rodriguez-X</u>"), Civil Action No. 13-7058

(RMB) (D.N.J.).These complaints arrived within three-four days

after submission of IFPs in <u>Rodriquez-I</u>, <u>II</u>, <u>III</u>, <u>IV</u>, <u>V</u> and <u>VI</u>.

　　The <u>Rodriguez-VII</u> complaint named, as defendants, Honorable

Mark H. Sandson, a state judge ("Judge Sandson"), public defender

Eric Shenkis, Esq., as well as Erica Zerlyko, Esq. ("Zerlyko"), a

prosecutor, and Pat Hallman, a state court stenographer.  <u>See</u>

<u>Rodriguez-VII</u>, Docket Entry No. 1, at 3-4 and 7.  The complaint

alleged that Judge Sandson violated Plaintiff's rights by

admitting a certain witness' testimony into evidence and being

willing to accept Plaintiff's guilty plea, while the public

defender violated Plaintiff's rights by recommending him to

accept the plea offer.  Plaintiff also asserted that Zerlyko

violated Plaintiff's rights by proffering the aforesaid witness

testimony, as well as by offering him that plea deal,[5] while the

stenographer violated his rights by taking down Plaintiff's

---

　　[5]  Plaintiff's other filings suggest that this witness might
have been the municipal judge who presided over Plaintiff's prior
criminal prosecution and, in addition, over Plaintiff's post-
conviction relief ("PCR") proceedings.  <u>See Rodriguez-IX</u>, Docket
Entry No. 1, at 5.  It also appears that, at conclusion of an
evidentiary hearing held in that PCR proceedings, Petitioner made
certain statements about and to that municipal judge, and these
statements – being qualified as terroristic threats – gave rise
to Plaintiff's currently ongoing criminal prosecution.  It also
appears that, upon this municipal judge's filing of the charges
that gave rise to Plaintiff's current criminal prosecution,
Plaintiff filed a grievance with the Advisory Committee on
Judicial Conduct, seeking actions against that municipal judge.

testimony in the fashion Plaintiff deemed incorrect.  <u>See</u> <u>id.</u> at 4-5 and 7.

Plaintiff requested $1 million for "emotional, physical, psychological and social distress," $50,000 "for two semesters [he] lost at [college] due to [Defendants'] constant harassment," and $100,000 "for the legal work [he] did."  <u>Id.</u> at 6.

The <u>Rodriquez-VIII</u> complaint named, as defendants, Judge Sandson, another prosecutor, <u>i.e.</u>, Theodore Housel, Esq. ("Housel").  <u>See</u> <u>Rodriquez-VIII</u>, Docket Entry No. 1, at 4.  It asserted that Judge Sandson violated Plaintiff's right by denying his application for PCR relief, while Housel violated his rights by filing a PCR brief opposing Plaintiff's application and defending the State's position.  <u>See</u> <u>id.</u> at 4-5.  In <u>Rodriquez-VIII</u>, Plaintiff requested the following relief: "I desire all convictions over[]turned and $50,000 dollars for the legal work I produced that [I] furnished [at] the [PCR evidentiary] hearing.  I [also] desire $20,000 for the time lost and one million dollars for emotional, psychological and social distress."  <u>Id.</u> at 6.[6]

---

[6]  In sum, it appears that the <u>Rodriquez-VII</u> complaint focused on Plaintiff's prior criminal proceedings at the trial level, while his <u>Rodriquez-VIII</u> complaint focused on Plaintiff's prior criminal proceeding at the PCR (<u>i.e.</u>, collateral attack) level, that included the evidentiary hearing during which Plaintiff made the statements underlying his current prosecution.

The complaint in <u>Rodriguez-IX</u> named five other persons as defendants. <u>See</u> <u>Rodriguez-IX</u>, Docket Entry No. 1, at 1. The complaint asserted that, on July 15, 2006, a certain New Jersey Transit Police Officer directed Plaintiff to leave a public bus (which Plaintiff then-just-boarded), but Plaintiff refused to comply with that directive, and so the Transit Police Officer arrested him on that basis.[7] Plaintiff named, as defendants, that municipal judge, the public defender who represented Plaintiff in that municipal matter, two other prosecutors (who prosecuted that municipal matter) and his arresting officer. <u>See</u> <u>Rodriguez-IX</u>, Docket Entry No. 1, at 1, 3-4 and 7. The <u>Rodriguez-IX</u> complaint closed with a request for $5 million in damaged "for the emotional, physical, psychological and social distress" and also a request to commence criminal proceedings against all defendants named in that matter.[8] <u>See</u> <u>id.</u> at 6.

---

[7] Since this arrest triggered Plaintiff's prosecution before a municipal judge, it appears that the arrest challenged in <u>Rodriguez-IX</u> is the transaction directly related to and preceding: (1) Plaintiff's criminal prosecution challenged in <u>Rodriguez-VII</u>, which included the plea offer and the judicial ruling as to admissibility of a certain testimony; and, also, (2) Plaintiff's following PCR proceeding challenged in <u>Rodriguez-VIII</u>, where Plaintiff made the statements underlying his current prosecution on the terroristic threats charges. <u>See</u> <u>supra</u>, n.5.

[8] Plaintiff is without a right to demand or force criminal prosecution of any Defendant because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." <u>Davis v. Cumberland County Dep't of Corr.</u>, 2013 U.S. Dist. LEXIS 142305, at *41-42 (D.N.J. Oct. 2, 2013) (quoting <u>Marinari v. Trump Plaza Hotel & Casino</u>, 2012 U.S. Dist. LEXIS

14

Finally, the <u>Rodriguez-X</u> complaint named Judge DeLury and
yet another prosecutor, Richard McKelly, Esq. ("McKelly") as
defendants.  <u>See</u> <u>Rodriguez-X</u>, Docket Entry No. 1, at 1 and 4.  In
<u>Rodriguez-X</u>, Plaintiff has reverted to the current events and
alleged that Judge DeLury has been violating his rights by
presiding over Plaintiff's currently ongoing prosecution,
refusing Plaintiff's <u>pro</u> <u>se</u> application for taking judicial
notices of certain unspecified constitutional provisions and
directing Plaintiff's confinement on the basis of a state statute
Plaintiff deems unrelated to the penal provision underlying his
charges.[9]  <u>See</u> <u>id.</u> at 4.  As to McKelly, Plaintiff asserts that

---

80011, at *18 (D.N.J. June 8, 2012) (quoting, in turn, <u>Collyer v.</u>
<u>Darling</u>, 98 F.3d 211, 222 (6th Cir. 1996)) and citing <u>United</u>
<u>States v. Jarvis</u>, 560 F.2d 494, 497 (2d Cir. 1977); <u>Pokalsky v.</u>
<u>SEPTA</u>, 2002 U.S. Dist. LEXIS 16175 (E.D. Pa. Aug. 28, 2002);
<u>Savage v. Arnold</u>, 403 F. Supp. 172 (E.D. Pa. 1975); <u>United States</u>
<u>v. Blierley</u>, 331 F. Supp. 1182 (W.D. Pa. 1971); <u>Brown v. Duggan</u>,
329 F. Supp. 207 (W.D. Pa. 1971); and <u>Spader v. Wilentz</u>, 25
F.R.D. 492 (D.N.J), <u>aff'd</u>, 280 F.2d 422 (3d Cir.), <u>cert.</u> <u>denied</u>,
364 U.S. 875 (1960)).  Moreover, "[t]his Court is without
authority to do so on Plaintiff's behalf."  <u>Id.</u> at 42 (citing
<u>Maine v. Taylor</u>, 477 U.S. 131, 137 (1986); <u>Heckler v. Chaney</u>, 470
U.S. 821, 832 (1985); <u>Leeke v. Timmerman</u>, 454 U.S. 83, 86-87
(1981); <u>United States v. General Dynamics Corp.</u>, 828 F.2d 1356,
1366 (9th Cir. 1987)).  "[T]he district court [is obligated to]
refus[e] fil[ing] criminal charges or . . . compel[ing]
prosecution based on those charges."  <u>Id.</u> (relying on <u>Ellen v.</u>
<u>Stamm</u>, 1991 U.S. App. LEXIS 30558 (9th Cir. 1991), <u>cert.</u> <u>denied</u>
<u>sub</u> <u>nom</u>, <u>Montalvo v. Stamm</u>, 506 U.S. 1047 (1993)).

    [9]  Hence, it appears that the chain of events challenged in
Plaintiff's four latest actions was as follows: (a) in 2006,
Plaintiff is arrested for refusing to comply with a Transit
Officer directive; (b) a municipal-level criminal proceeding is
commenced against him; (c) Plaintiff is offered a plea in that

he has been violating Plaintiff's rights by proffering an affidavit executed by a certain witness.[10]  See id. at 4. Plaintiff seeks this Court's order directing Judge Delury to verify his jurisdictional mandate, immediate commencement of Plaintiff's criminal prosecution in the state forum and disclosure of any additional evidence McKelly might have in support of the aforesaid witness' affidavit.  See id. at 6.  In addition, Plaintiff seeks $1,000 for each hour of incarceration, $100,000 for his "legal effort" and £100,000 (British Pounds) for "emotional, physical, psychological and social distress."  Id.

II.  DISCUSSION

Since the pleading requirement of Rule 8 have already been detailed by this Court to Plaintiff four times around, another

---

matter; (d) Plaintiff is convicted in that municipal action; (e) Plaintiff commences a PCR proceedings; (e) the PCR judge grants Plaintiff's application for an evidentiary hearing; (f) Plaintiff, failing to prevail at that hearing, makes statements that prompt the presiding judge file criminal charges against Plaintiff, asserting terroristic threats; (g) another round of criminal proceedings is commenced on the basis of these charges, this time at the Law Division level; and (h) Plaintiff is currently held in pre-trial custody awaiting trial on these charges.  These challenges, taken out of any chronological order, are scattered among Plaintiff's four latest complaints and, seemingly, might have been hinted at in those complaints that had been submitted in Plaintiff's previously commenced six matters.

[10]  Plaintiff's submissions suggest that the witness might have been a staff employee serving the municipal judge with regard to whom Plaintiff made statements qualified as terroristic threats, since it appears that the witness made certain averments to witnessing Plaintiff's utterances of these statements.

recital of the same appears superfluous.  In contrast, since Plaintiff's challenges raised in his four latest complaints implicate the same substantive tests (albeit with regard to different transactions), it appears warranted to begin the discussion by detailing these tests and then assess Plaintiff's allegations in light of those substantive standards.

A.    Judicial, Prosecutorial and Witness Immunities

"[J]udges are immune from suit under section 1983."  Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000); see also Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). Judicial immunity applies to all actions that are "judicial" in nature, see Stump v. Sparkman, 435 U.S. 349, 356 n.6 (1978), that is, all "function[s] normally performed by a judge . . . in his judicial capacity."  Id. at 362.  "'[Plaintiff's] allegations of bad faith [and] malice' cannot overcome [judicial] immunity." Abulkhair v. Rosenberg, 457 F. App'x 89 (3d Cir. 2012) (quoting Mireles, 502 U.S. at 11); see also Gallas, 211 F.3d at 769 ("an act does not become less judicial by virtue of an allegation of malice or corruption of motive," or that such act is "unfair" or "controversial"); accord Stump, 435 U.S. at 363 ("[d]isagreement with the action taken by the judge . . . does not justify depriving the judge of his immunity").  "[J]udges . . . are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have

17

been done maliciously or corruptly." Figueroa v. Blackburn, 208
F.3d 435, 440 (3d Cir. 2000) (quoting Stump, 435 U.S. at 355-56).

Prosecutors are also absolutely immune from actions under §
1983 for "initiating and pursuing a criminal prosecution."
Kalina v. Fletcher, 522 U.S. 118, 123 (1997) (quoting Imbler v.
Pachtman, 424 U.S. 409, 410 (1976)).  Thus, "a state prosecuting
attorney who act[s] within the scope of his duties initiating and
pursuing a criminal prosecution" is not amenable to suit under §
1983.  Imbler, 424 U.S. at 410.  Correspondingly, a prosecutor's
appearances and statements made in court or applications for
certain favorable-to-the-State decisions, or briefs advocating
the State's position, or the presentation of evidence at hearings
and trial are protected by absolute immunity.  See Burns v. Reed,
500 U.S. 478, 492 (1991).  Similarly, "acts undertaken by a
prosecutor in preparing for the initiation of judicial
proceedings or for trial, and which occur in the course of his
role as an advocate for the State, are entitled to the
protections of absolute immunity."  Buckley v. Fitzsimmons, 509
U.S. 259, 273 (1993).

Furthermore, witnesses are absolutely immune from civil
damages based upon their testimony.  See Briscoe v. LaHue, 460
U.S. 325, 341-46 (1983).  That immunity extends to all witnesses,
including government investigators and enforcement officers, and
to all forms of court proceedings, including trial and pre-trial

stages, such as grand jury, evidentiary hearings, etc.  <u>See</u>

<u>Rehberg v. Paulk</u>, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012);

<u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992).

   B.   <u>Color of Law Requirement</u>

   While not "immune" from suit or liability, an attorney may

be entitled to dismissal of constitutional challenges on the

ground that they fails to state a color-of-law claim.  This is so

because lawyers, typically, are not "state actors."  "[A] lawyer

representing a client is not, by virtue of being an officer of

the court, a state actor 'under color of state law' within the

meaning of § 1983."[11]  <u>Polk County v. Dodson</u>, 454 U.S. 312, 318

(1981).  Paramount here, the color-of-law requirement does not

distinguish between privately-retained an appointed counsel.

Thus, a public defender "does not act under color of state law

_____

   [11]  To recover against a defendant under 42 U.S.C. § 1983, a
plaintiff must establish that the defendant acted under "color of
[state] law" to deprive him of a right secured by the federal
Constitution or laws.  <u>See</u> <u>Groman v. Twp. of Manalapan</u>, 47 F.3d
628, 633 (3d Cir. 1995).  Section 1983 does not create any
substantive rights; rather, it provides an avenue of recovery for
the deprivation of established federal constitutional and
statutory rights.  <u>See</u> <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d
Cir. 1996); <u>Groman</u>, 47 F.3d at 633.  "The color of state law . .
. is a threshold issue; there is no liability under [Section]
1983 for those not acting under color of law."  <u>Id.</u> at 638.  The
color of state law element in a section 1983 action requires that
"the conduct allegedly causing the deprivation of [plaintiff's
rights] be fairly attributable to the State."  <u>Lugar v. Edmonson
Oil Co.</u>, 457 U.S. 922, 937 (1982).

when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk, 454 U.S. at 325.

C.   Other Applicable Judicial Doctrines

In a series of cases beginning with Preiser v. Rodriquez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.   In Preiser, state prisoners who lost good-conduct-time credits as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of these credits.   See id. at 476. The Supreme Court, however, held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."   Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court addressed a corollary question to that presented in Preiser, i.e., whether a prisoner could implicitly challenge the constitutionality of his conviction in a § 1983 suit seeking only damages (a form of relief not available through a habeas corpus proceeding).   Again, the Court rejected § 1983 as a vehicle to implicitly challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, a § 1983
plaintiff must prove that the conviction or sentence
has been reversed on direct appeal, expunged by
executive order, declared invalid by a state tribunal
authorized to make such determination, or called into
question by a federal court's issuance of a writ of
habeas corpus, 28 U.S.C. § 2254.  A claim for damages
bearing that relationship to a conviction or sentence
that has not been so invalidated is not cognizable
under § 1983.

Id. at 486-87 (footnote omitted).

In light of a prisoner's inability to initiate a valid §

1983 action for wrongful conviction until and unless such

conviction is overturned, Heck coined the concept of prematurity,

pursuant to which "a § 1983 cause of action for damages

attributable to an unconstitutional conviction or sentence does

not accrue until the conviction or sentence has been invalidated"

by a habeas writ or state court determination.  Id. at 489-90.

Furthermore, while Heck posed limitations on the scope of

actions amenable to civil challenges post-conviction, another

doctrine poses limitations on the scope of federal interference

in state actions pre-judgement.  Specifically, the doctrine of

abstention, which has developed since Younger v. Harris, 401 U.S.

37 (1971), "espouse[s] a strong federal policy against

federal-court interference with pending state judicial

proceedings absent extraordinary circumstances."  Middlesex

County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423,

431 (1982).  "Younger abstention . . . is premised on the notion

of comity, a principle of deference and 'proper respect' for
state governmental functions in our federal system." <u>Evans v.
Court of Common Pleas, Delaware County, Pa.</u>, 959 F.2d 1227, 1234
(3d Cir. 1992), <u>cert.</u> <u>dismissed</u>, 506 U.S. 1089 (1993).  Comity
concerns are especially heightened when the ongoing state
governmental function is a criminal proceeding.  <u>See</u> <u>id.</u>
Therefore, absent a narrow exception, federal courts do not
interfere in ongoing state proceedings, moreover prosecutions.[12]

D.  <u>Timeliness</u>

Civil rights claims are best characterized as personal
injury actions and are governed by the applicable state's statute
of limitations for personal injury actions.  <u>See</u> <u>Wilson v.
Garcia</u>, 471 U.S. 261, 280 (1985).  Here, claims are governed by
New Jersey's two-year limitations period for personal injury
actions based on a wrongful act, neglect, or default, N.J. Stat.

---

[12]  The <u>Younger</u> abstention is warranted if: "(1) there are
ongoing state proceedings [of] judicial . . . nature; (2) the
state proceedings implicate important state interests; and (3)
the state proceedings afford an adequate opportunity to raise
federal claims."  <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir.
1989).  Where the plaintiff has not asserted that he is unable to
present his federal claims in his related state court proceedings
the court may assume that the state procedures will afford an
adequate remedy.  <u>See</u> <u>Cade v. Newman</u>, 422 F. Supp. 2d 463, 466,
n.2 (D.N.J. 2006) (abstaining from addressing the plaintiff's
arrest-without-probable-cause and denial-of-speedy-trial claims
upon citing <u>Kelm v. Hyatt</u>, 44 F.3d 415, 420 (6th Cir. 1995),
citing, in turn, <u>Pennzoil Co. v. Texaco</u>, Inc., 481 U.S. 1, 17
(1987) ("Initially, we must presume that the state courts are
able to protect the interests of the federal plaintiff")).

Ann. § 2A:14-2.  See Montgomery v. DeSimone, 159 F.3d 120, 126 &

n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dep't,

892 F.2d 23, 25 (3d Cir. 1989).  Therefore, unless an appropriate

tolling applies, an untimely claim is subject to dismissal for

failure to meet the statute of limitations requirement.[13]

    E.   Plaintiff's Complaints Fail to State a Viable Claim

In light of the foregoing, Plaintiff's challenges raised in

Rodriquez-VII, VIII, IX and X are facially deficient.

    1.   *Rodriguez-VII*

In Rodriquez-VII, Plaintiff's claims against Judge Sandson

are based on Judge Sandson's decision to admit a certain witness'

testimony and Judge Sandson's willingness to accept Plaintiff's

guilty plea.  These acts are of undisputably judicial nature and,

therefore, covered by absolute immunity.[14]

---

[13] A federal court adopting a state statute of limitations
will also apply that state's interrelated limitations provisions
regarding tolling, revival, and questions of application.  See
Wilson v. Garcia, 471 U.S. 261, 269 (1985).  The statutes set
forth certain bases for "statutory tolling," see, e.g., N.J.
Stat. Ann. §§ 2A:14-21 and -22, and New Jersey law permits
"equitable tolling" where "the complainant has been induced or
tricked by his adversary's misconduct into allowing the filing
deadline to pass," or where a plaintiff has "in some
extraordinary way" been prevented from asserting his rights, or
where a plaintiff has timely asserted his rights mistakenly by
either defective pleading or in the wrong forum.  See Freeman v.
State, 347 N.J. Super. 11, 31 (N.J. Super. Ct. App. Div.),
certif. denied, 172 N.J. 178 (2002).

[14] Plaintiff's claims against a court stenographer are
deficient for the same reason.  See Davis v. Philadelphia County,
195 F. Supp. 2d 686 (E.D.Pa.2002) (quasi-judicial immunity

Plaintiff's claims against prosecutor Zerlyko are barred by prosecutorial immunity, since they are based on Zerlyko's acts of representing the State in Plaintiff's first criminal proceeding, i.e., proffering a witness' testimony and offering a plea deal.

Finally, Plaintiff's claims that his public defender violated his rights by recommending to accept a plea deal are deficient for lack of color of law.[15]

---

applies to court staff, such as clerks of judicial records and court reporters performing nondiscretionary, purely court-routine actions); accord Wicks v. Lycoming Co., 456 F. App'x 112, 115 (3d Cir. 2012) (a court administrator is absolutely immune from a suit for damages for transferring case from one judge to another); Wallace v. Abell, 217 F. App'x 124 (3d Cir. 2007) (court personnel are immune for nondiscretionary acts such as entering orders and notifying parties). Here, Plaintiff asserted claims against a court stenographer on the basis of the stenographer's act of taking down Plaintiff's testimony during a hearing. Since this is a nondiscretionary action on the part of the stenographer, Plaintiff's allegations are barred by quasi-judicial immunity. In the event Plaintiff is disputing the transcript, his remedy is an application to his presiding judge for reconciliation of the disputed portion of the transcript. However, Plaintiff has no constitutional right to such measure.

[15] A public defender who conspires with the prosecutor to secure her client's conviction is acting under color of state law. See Tower v. Glover, 467 U.S. 914, 920 (1984). Yet, "a bare assertion of conspiracy will not suffice" and, without more, "a conclusory allegation of agreement at some unidentified point does not supply facts" adequate to state a conspiracy claim under § 1983. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). As the Court explained, "terms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation — for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint." Id. at 557 (quoting DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999)). Here, Plaintiff neither asserted

Therefore, Plaintiff's <u>Rodriguez-VII</u> are subject to dismissal for failure to state a claim upon which relief can be granted.  Moreover, since Plaintiff's repleading would neither dissolve judicial and prosecutorial immunities nor supply color of law to Plaintiff's allegations against his public defender, and since Plaintiff numerously tapped the same allegations in his <u>Rodriguez-I</u>, <u>II</u>, <u>III</u>, <u>IV</u>, <u>V</u> and <u>VI</u> complaints and was availed to four rounds of repleading but did not produce a viable claim, issuing Plaintiff another leave to amend would be futile.  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir. 2000); <u>Coventry v. U.S. Steel Corp.</u>, 856 F.2d 514, 519 (3d Cir. 1988).  Therefore, his <u>Rodriguez-VII</u> complaint will be dismissed with prejudice.

### 2.  *Rodriguez-VIII*

The deficiencies of Plaintiff's <u>Rodriguez-VIII</u> complaint are substantively identical to those detailed <u>supra</u>.  In <u>Rodriguez-VIII</u>, Plaintiff's challenged the events of his PCR proceedings by asserting that Judge Sandson wrongly denied him relief, that prosecutor Housel erred in electing to oppose Plaintiff's PCR application and defending the State's position.

---

the facts of a conspiracy nor alleged any conspiracy or agreement between his public defender and the prosecutor.  Furthermore, Plaintiff's extensive discussions of his first prosecution do not indicate that he has any specific facts, rather than hypothetical or bold conclusions, that might establish a conspiracy.

However, Judge Sandson's actions were of judicial nature, and those of Housel unambiguously qualify as covered by prosecutorial immunity. Therefore, Plaintiff's Rodriguez-VIII complaint should be dismissed for failure to state a claim, and – since Plaintiff cannot replead his claims so to dissolve these immunities (and he had already had many opportunities to replead these claims in his Rodriguez-I, II, III, IV, V and VI actions), issuing him another leave to amend would be futile. See Foman, 371 U.S. at 182; Alvin, 227 F.3d at 121; Coventry, 856 F.2d at 519. Thus, his Rodriguez-VIII complaint will be dismissed with prejudice.

      3.  *Rodriguez-IX*

In Rodriguez-IX, Plaintiff raised challenges based on his July 15, 2006, arrest and the early stages of the criminal proceedings that followed. While this Court cannot rule out the possibility that Plaintiff's first prosecution might have protracted long enough to take Plaintiff's claims based on the in-court events outside the statute of limitations bar, it is self-evident that Plaintiff's arrest-based claims have been rendered untimely on July 14, 2008, i.e., two years after that arrest and more than five years prior to his filing of the Rodriguez-IX complaint. Thus, these claims should be dismissed.[16] Moreover, since Plaintiff's multiple submissions

---

    [16] Since Plaintiff asserted that his arrest resulted from his *refusal* to comply with a Transit Officer's directives, it

indicate that he has engaged into multiple active litigations starting 2006, it is apparent that he could have commenced a timely civil rights action based on that arrest had wished to.[17] Cf. Munchinski v. Wilson, 694 F.3d 308, 331 (3d Cir. 2012) (a litigant shall not be rewarded for "sleeping on his rights").

---

appears that the arrest was executed with probable cause. "The proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). "[W]hen an officer has probable cause to believe a person committed even a minor crime[,] . . . the balancing of private and public interests is not in doubt [and t]he arrest is constitutionally reasonable." Virginia v. Moore, 553 U.S. 164, 171 (2008). Correspondingly, a plaintiff must state "the facts [showing that, under the] circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested." Mosley v. Wilson, 102 F.3d 85, 94-5 (3d Cir. 1996); accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010). Here, Plaintiff concedes that his arrest resulted not from the fact that he boarded a bus but from the fact of his refusal to comply with a law enforcement officer's orders. However, in light of the facial untimeliness of Plaintiff's arrest-based claims, this Court need not reach the issue of their substantive sufficiency.

[17] Indeed, Plaintiff's numerous complaints praised Plaintiff's litigation talent and numerous efforts, and valued the latter in thousands of dollars. Moreover, to the extent a disposition of Plaintiff's civil rights challenges could have interfered with resolution of the criminal charges associated with that arrest, Plaintiff could have avoided that conflict by timely filing and then seeking stay of his search and seizure challenges. See Wallace v. Kato, 549 U.S. 384, 393-94 (2007) ("{I]t is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case [based on the very same events that gave rise to the civil action] is ended").

Thus, no equitable tolling could apply to Plaintiff's arrest-
based claims.  And, since Plaintiff cannot cure the untimeliness
of this line of claims by repleading, issuing him another leave
to amend would be facially futile.  See Foman, 371 U.S. at 182.

As to the remainder of Plaintiff's Rodriquez-IX claims,
these claims – even if presumed timely due to a hypothesized here
protraction of Plaintiff's first criminal proceeding – are
subject to dismissal on the same grounds as Plaintiff's
challenges raised in Rodriquez-VII and Rodriquez-VIII.  Indeed,
Plaintiff's claims against the municipal judge who presided over
his first prosecution are barred by judicial immunity, while his
claims against the prosecutors who commenced and prosecuted those
proceedings are barred by prosecutorial immunity.[18]  Plaintiff's
claims against the public defender who represented him in that

_____

[18]  To the extent Plaintiff wished to assert claims against
the municipal judge on the bases of what appear to be: (a) that
municipal judge's filing of charges that gave rise to Plaintiff's
current prosecution; and/or (b) that municipal judge's testimony
in Plaintiff's currently ongoing criminal proceedings, the latter
line of claims is barred by the witness immunity, while the
former falls short for failure to establish that the judge acted
under color of state law when he filed his charges.  See Jacobs
v. A Robert Depersia Agency, 2009 U.S. Dist. LEXIS 23122, at *9
(D.N.J. Mar. 20, 2009) (One's act of commencing or participating
in a litigation "does not transform a private litigant into a
state actor") (citing Drew v. Chase Manhattan Bank, N.A., 1998
U.S. Dist. LEXIS 11616 (S.D.N.Y. July 28, 1998) (quoting, in
turn, Goldberg v. Lynch, 1998 U.S. Dist. LEXIS 8906, at *6
(S.D.N.Y. June 18, 1998) for the proposition that, "[i]f it was
otherwise every state judgment could form the basis of a § 1983
action . . . .  A party's participation in a litigation is not
sufficient to cloak it with the authority of a state actor").

municipal matter are also deficient on the already stated basis,
_i.e._, for failure to meet the color-of-law requirement.  And,
since: (a) Plaintiff can neither dissolve the aforesaid
immunities nor cure the lack-of-state-action deficiency by
repleading; and (b) he was availed to numerous opportunities to
amend his claims in Rodriguez-I, II, III, IV, V and VI, his
Rodriguez-IX complaint will be dismissed with prejudice.  See
Foman, 371 U.S. at 182; Alvin, 227 F.3d at 121.

      4.  *Rodriguez-X*

    Finally, in his Rodriguez-X complaint, Plaintiff asserted
that Judge DeLury violated his rights by presiding over his
currently ongoing prosecution, refusing Plaintiff's requests for
taking judicial notices and directing Plaintiff's confinement (or
declining his release on bail) on the basis of a certain state
statute.  Since all these acts are of undisputably judicial
nature, Plaintiff's claims against Judge DeLury are barred by
judicial immunity.  By the same token, Plaintiff's claims against
prosecutor McKelly based on McKelly's ardent advancement of the
State's position and proffering of a certain witness' testimony
are barred by prosecutorial immunity.  Furthermore, Plaintiff's
claims against a certain witness (based on her offering of a
testimony) are barred by witness immunity.[19]

---

    [19] The best this Court can surmise, it appears that the
witness whose testimony is challenged in Rodriguez-X is either a

Finally, under <u>Younger</u>, 401 U.S. 37, this Court must abstain from any intervention in Plaintiff's currently ongoing criminal proceedings.[20]  And, to the extent Plaintiff seeks this Court's invalidation of Plaintiff's prior convictions, these challenges cannot be raised in a civil matter, <u>see</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, and Plaintiff's claims for damages based on those prior convictions are premature under <u>Heck</u>, 512 U.S. 477.

Since Plaintiff cannot cure any of these deficiencies by repleading, his <u>Rodriguez-X</u> complaint will also be dismissed with prejudice.[21]  <u>See</u>  <u>Foman</u>, 371 U.S. at 182.

---

chambers- or a clerk's office-staff providing services to the municipal judge who presided over Plaintiff's first criminal prosecution and the following PCR action.  It also appears that this witness was present at the time when Plaintiff made the statements that had been qualified as terroristic threats against that municipal judge and, therefore, she offered her testimony as to these statements for the purposes of judicial pre-trial determinations made in Plaintiff's current criminal prosecution.

[20]  <u>See</u> this Opinion, n.12 (detailing the elements of the <u>Younger</u> abstention).  All three <u>Younger</u> criteria are met here. First, Plaintiff's claim concerns the separate pending criminal case.  Second, based upon the fact that Plaintiff is attempting to raise issues concerning the validity of the charges filed against him, the proceeding clearly implicates important state interests.  Third, the State forum affords Plaintiff an adequate opportunity to raise his federal law issues, such as his substantive challenge, his speedy-trial claim and/or claim based on <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Since Plaintiff did not offer this Court any reason to find that he is precluded from raising these claims in state <u>fora</u>, either at the Law Division- or the Appellate Division-level, or before the Supreme Court of New Jersey, this Court is constrained to abstain.

[21]  Plaintiff's frivolous requests for this Court's order "voiding" either all New Jersey penal statutes or those that were

30

III. CONCLUSION

For the foregoing reasons, Plaintiff will be granted IFP status for the purposes of his Rodriquez-VII, VIII, IX and X actions, and the Clerk will be directed to file the complaints submitted in these four matters.  These four complaints will be dismissed; each such dismissal will be with prejudice.

The Court's determination as to Plaintiff IFP status in Rodriquez-I, II, III, IV, V and IV actions will remain reserved. He will be allowed additional time to submit his amended pleadings in those matters, provided that: (a) such pleadings comply with the requirements of Rules 8, 15, 18 and 20; and (b) raise claims that are *not duplicative* of those resolved in the instant Opinion, i.e., in connection with the Court's screening of the complaints filed in Rodriquez-VII, VIII, IX and X.[22]

An appropriate Order follows.


                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**

---

implicated by Plaintiff's past/current criminal prosecutions will be dismissed.

[22]  In order to obtain IFP status for the purposes of his Rodriquez-I action, Plaintiff must submit an affidavit averring, under penalty of perjury, that Plaintiff was not placed in any form of law enforcement custody at the time he submitted his Rodriquez-I complaint.  The Court takes this opportunity to stress that, for the purposes of the Court's IFP inquiry conducted in connection with Rodriquez-I, the particular facility where Plaintiff was housed at that time, is of *no relevance*.

**United States District Judge**

Dated: December 11, 2013